Martin, J.
delivered the opinion of the court, t ^e plaintiffs, endorsers of a note of Braynard; 110t yet payable at the inception of the suit, averring he had secretly departed, removing out of the state all his property, except sixty one hogsheads of rum, attached by V. Rilieux, prayed an attachment thereon, alledging they were sufficient to satisly his and their claims. It was accordingly obtained and levied.
H. B. Morse, and J. Brandt and co. were made parties to the suit as garnishees.
*573 Morse answered he was not accountable for the rum, as it did no longer belong to Braynard, from whom he had purchased it, for a valuable 1 consideration.
J. Brandt and co. denied all the facts stated in the petition, and added, that they were then, and at the time of the attachment, the true and lawful owners of the rum, and in possession of it.
By consent, the rum was sold, and the proceeds were deposited in the hands of J. Brandt and co. to await the determination of the suit.
V. Rilieux, J Walton, J. R. Roans, J. Cole aud J. Musson, having also brought suits against Braynard and J. Brandt, and co. against the sheriff, their agreement was entered on record, that the question, of the right of property to the rum, should be binding as to that right, in all and each of the above causes.
The court appointed an attorney to Braynard.
Judgment was given that <⅝ the transfer of the property, since attached, having been made by Braynard, in a suspicious time, when he was not only in failing circumstances, but preparing secretly to absent himself, was null and void ” The plaintiffs had judgment against Braynard for ^he amount of the note, but, in sustaining the attachment, the court reserved the right of the Jiolders of the rum for the freight, storage and necessary expenses.
*574 From this íudgment, Morse and J. Brandt. , , , and co. appealed.
There was no statement of facts, but the parish judge certified that the whole evidence before him was spread on the record.
From this it appears M'Neil, Fisk and Rutherford, who were directed to be made parties to the suit, were never cited and the attorney appointed to Braynard did not act, so that there was not any answer put in for, nor any judgment by default taken against, him.
The other facts in the case are these : some time in the summer of 1818, Braynard had seventy one hogsheads of rum consigned to him, and endorsed the bill of lading to S. A. Wood-berry and co. a firm of which H. B. Morse is a partner ; being arrested for a debt of about 8800, Braynard proposed to one Terry, to bail him and offered as a means of indemnification, that the bill of lading should be endorsed to him, by S. A. Woodberrv and co, which was accordingly done. A few days after Terry agreed to endorse the bill to J. Brandt and co. on they relieving him from the bail. This was accordingly done, and the latter having taken an assignment of the bill of lading, entered the rum at the custom house, and took possession of it. The record does not enable us to ascertain the exact dates of these transactions;
*575 On the 12th of August, 1818, Braynard gave a power of attorney to Morse to transact his business, and three days after sailed for Boston. At this time, he was apprehensive of an arrest, having endorsed notes to a considerable amount, for persons who had since failed, and Morse told one of the subscribing witnesses to the power of attorney, that Braynard meant to make a difference between the payment of these notes and his other debts.
On the lOth of August, Braynard signed a receipt, for the amount of the seventy-one hogsheads of rum, to S. A. Woodberry and co. On the 13th, an account current, between him and them, exhibited a balance due the latter (the rum being accounted for) of S2843, with a reserve of S2735, due by him to J. Brandt and co.
On the 15th, the day of Braynard’s departure, the rum was attached, in the hands of J. Brandt andco. at the suit of V. Riiieux, by whose consent it was left there, on they giving a receipt to the sheriff, acknowledging it to be the property of M‘Neil, Fisk and Rutherford, who had stored it with them, and who held their receipt. On the 29th, the rum was attached in the present suit.
It appears to us, that the parish judge erred, ha giving judgment against Braynard, as there *576 was no answer filed bv the attorney appointed to " J J 1 him by the court, so as to present an issue to be tried, and as there was no judgment by default taken against him. The judgment is therefore annulled, avoided and reversed.
Proceeding to determine what judgment ought to have been given below, it appears to us, that the defendant Braynard was not before the court: no property of his was in the custody or power of the court. By the endorsement of the bill of lading to S. A, Wood berry and co. by Braynard, and by that house to J Brandt and co. the property of the rum passed out of Braynard, and it appears, that the proceeds have been fairly applied to the payment of the freight, duties and charges accruing on the rum, and the discharge of the debts due by Braynard, to J. Woodberry and co. and J. Brandt and co. But, it is contended, that at the time, when he assigned the bill of lading, he was in insolvent circumstances, in the knowledge of S. A. Woodberry and co. was pressed by his creditors, and had not sufficient property in the state to pay his debts therein. This does not, in the opinion of this court, render the assignment absolutely void : for it ivas necessary to the payment of the duties, freight and charges on the rum; further, it was not made without consideration, since J. Brandt and co. became bail for the assignor. On the *577 Subsequent failure of Braynard, the mass of his creditors might perhaps compel S. A. Wood-berry and co. and J, Brandt and co to bring into the common stock the balance of the proceeds 1 of the rum, after deducting the amount of the freight, duties and other charges, in order that it might be distributed among all the creditors, including these two houses : but, no particular creditor has a better right to this balance than them. It would be equally unjust, that the present plaintiffs should receive any more than their proportion, or obtain the whole of their debt, as to allow the proceeds to remain where they are. If the present holders are to account, they must do so to the mass, and not to any individual, of the creditors of Braynard.
Morel for the plaintiffs, Workman for the garnishees.
It is, therefore ordered, adjudged and decreed, that the plaintiffs’ petition be dismissed, and that they pay costs in both courts.