Porter, J.
delivered the opinion of the court. This case has been already before the court, and was remanded in order that further proof might be had of a fact deemed material to a correct decision of the matters in dispute — the former proceedings are fully ported. 8 Martin, 235.
To the title alleged and proved by the . . plaintiff, the defendant pleads, that he is the owner of the slaves sued for; that he purchased them at a sheriff’s sale made in virtue of an execution issuing from a court of r tent jurisdiction, in pursuance of a judgment *608 rendered against the heirs of one Victor Du~ four; and that the plaiiitiffis one of those heirs.
East'n District.
May, 1822.
Laws which then- property, without their consent, should be strictly pur-
an aU_ enation of property is not expressed in the suRSt ñom^thé act-
If proceeds arising from property irregularh sold f sheriff s sale, have been «⅛"' cannot recover the property un-tu he repays the purchaser the amount.
defendant claims, was null and void, by reason of the defendant not being cited, and hecause 0ther proceedings were omitted which are necessary to render it valid; that supposing it to be regular, the writ of fieri fa-¿jj no¿ pursue jt&emdash;that the deed offered defendant shews that the sale was in vir-J fue an execution reciting another, and dif- © 7 ferent judgment, which judgment is not pro-it is rephed,that the judgment, under which
The first question then presented for our decision, is the regularity of the judgment in virtue of which it is stated the property was ir r j sold
We are of opinion that the validity of a sr J rendered by a court of competent jurisdiction, cannot be enquired into collatte-raHy as js attempted here. The decree J 7 r which such a tribunal renders, directly on the ' * point reviewed,is as a plea, a bar, or evidence, conclusive between the same parties, or those claiming under them, for the same thing. The errors complained of, were questions for the decision of the court which tried the cause. *609 and vve have no authority in a case arising he-tween the same parties, to examine how they were decided, unless regularly brought before us by an appeal, or by an action of nullity, if that remedy still exists. An act of the legislature has limited the period for bringing up causes to this court, and the Spanish jurisprudence requires, that where judgments are sought to be annulled, by an action, expressly given for that purpose, suit must be brought within a certain time. Now, if the party, instead of attacking the judgment, should be permitted, after the delays are expired, to sue for the object acquired under it, it is evident the regulations just alluded to, would be completely evaded. And it would be strange if the plaintiff could, in any case, successfully allege nullity in the replication, w hen an averment of the same kind would not be listened to in the petition.
The regularity of the proceedings, therefore, in the cases of Turgeau, and Camfranc vs. the heirs of Dufour, up to the time of rendering judgment, cannot be enquired into in this case.
But the measures taken under that judgment, to obtain the benefit of it, present an entirely different question. The authority of *610 a judicial decree does not prevent us from . . examining their correctness. And the plaintiff; on establishing that he, or his ancestor, once owned the slaves claimed, has a right to obtain judgment for them ; unless the possessor shews, either a title by prescription, the owner’s consent to transfer them, or a forced alienation, which stands in place of that consent.
A forced alienation results from a sale made at the time, and in the manner prescribed by law, in virtue of an execution issuing on a judgment already rendered by a court of competent jurisdiction. If a sale is made where these requisites are wanting, the purchaser does not acquire the “ right, title and interest” which the debtor had in the thing sold. Curia Philipica, P. 2, Remate, n. 27. Febrero, cinco juicios, lib. 3. cap. 2, sec. 5. n. 352 & 357. 4 Martin, 573. Has such an alienation taken place in the case now before us ?
The defendant insists that it has, and produces in evidence, a conveyance made to him by the former sheriff of the first superior court district, of the late territory of Orleans, in which it is recited, that by virtue of a fieri fia-das, issued at the suit of J. B. Camfranc and *611 others, against the heirs of Victor Dufour, he ” . . had sold the slaves claimed in the present action. No such judgment, however, being produced as that of Camfranc and others vs. the heirs of Dufour, we must hold that none exists, and that the sheriff, in making the sale, acted without authority.
The appellee’s counsel have, however, strenuously contended, that it is evident the sheriff meant the suits of Camfranc vs. Dufour and Turgeau vs. Dufour. But we cannot so understand it, for he has not said so, and we are not permitted to supply by intendment, what is wanting in an instrument of this kind. Much less can we say that the sheriff, in this case, sold under executions issuing in several suits, w hen he explicitly states, that it was in virtue of a fieri facias, at the suit of J. B. Camfranc and others. Laws which deprive men of their property, without their consent, should be strictly pursued by those who seek the benefit of them. 4 Wheaton, 77. The act of our legislature requires that the judgment on which execution issues should be recited in the deed of sale given by the sheriff 2 Martin's Dig. 336. That has not been done here; the consequence is, that the buyer has not a conveyance in *612 pursuance of the law under which he pur- . .... chased, and is, therefore, without title.
It is urged that the plaintiff has ratified this sale. This point received the serious consideration of the court on the former hearing. Before the particular instrument, which is said to contain the ratification, is considered, it is necessary to state the following facts :—
The brother of the present plaintiff D. Victor Dufour, died in St. Jago-de-Cuba. On his death, Laroque Turgeau took charge of his pr operty, and in conjunction with one Cartier D’Outremer, brought the slaves claimed in the petition, to Louisiana. Shortly after their arrival here, they were attached at the suit of J. B. Camfranc, and of Laroque Turgeau, and judgment was given in both cases, for the plaintiffs ; execution issued, and as it appears from the sheriff’s return, a certain sum of money was made on each.
Laroque Turgeau died in Jamaica. D’Ou-iremer, as his attorney in fact, had received the monies recovered in the suit against the heirs of Dufour. The plaintiff is heir, as well of Turgeau as Dufour. On arriving in this country he commenced the present action, and some time after bringing suit, being em *613 barrassed in his affairs, he applied to tremer for the monies held by him, as agent for Turgeau, and on executing a receipt, was paid over the sum of $1560. Whether he received this money as heir ofLaroque Turgeau, does not appear by the receipt, and is not expressly proved by the other evidence in the cause; but from all the facts of the case, there is a strong presumption, that he did receive it in that character.
As soon as the present action was commenced, the defendant obtained an injunction, by which Carlier D’Outremer was inhibited from making any disposition of the sum he had received as agent for Turgeau.
The particular expressions of the receipt require to be stated. It acknowleges $1560 to be paid, and that the money belongs to the succession of Laroque Turgeau, and also contains an engagement, that by reason of certain injunctions having issued, enjoining D’Ou-tremer from paying the money, one at the suit of Camfranc, and the other on the demand of one Lafitte, the amount received shall be returned, in case the said injunctions should be made perpetual.
Under these circumstances, the defendant *614 insists that the plaintiff cannot recover the property sold.
This position, it is believed, cannot be main-(-ajne(] The plaintiff’s right must be destroyed by some act which renounces his title, or conveys it to another. When it is attempted to shew this, by an instrument which does not express such an intention, common sense as well as law, requires that it should clearly result from the act. Had the appellant, as heir of Turgeau received unconditionally the money from D’Outremer, it might perhaps have been argued that he intended to abandon all right he had to the slaves, which he was then suing for. But when, in the very receipt he alludes to the injunction issued, in consequence of his suit against Camfranc, and promises to pay the money back if that injunction be confirmed, or in other words, in case he succeeds in the present action ; it surely cannot be urged he intended to renounce a claim, the ultimate recognition of which is made a condition of his repaying the amount received. Sufficient weight was perhaps not attached to this promise, to return the money when the case was formerly before the court.
On the w’hole, we are of opinion that the *615 defendant has not shewn a legal title to the property sued lor.
Another question still presents itself. It has been proved that the proceeds arising from the sale of the slaves were applied to the discharge of the judgment debts of the plaintiff, and the court is of opinion that he cannot recover in this suit, until he repay that money. This is the doctrine expressly laid down by Febrero, lib. 3, cap. 2, sec. 5, n. 357. And we readily adopt it; for nothing could be more unjust than to permit a debtor to recover back his property, because the sale was irregular, and yet allow him to profit by that irregular, sale, to discharge his debts.
It is unnecessary to notice particularly the bills of exceptions taken on the trial, as the opinion now expressed, meets and answers the questions of law raised by them.
After the cause has been litigated for such a length of time, it is to be regretted that we cannot now make a final disposition of it.— But it has not been proved what the services of the slaves were worth, and it is necessary to ascertain that fact, to enable us to decree what sum shall be paid by the plaintiff; the case must therefore be remanded for a new *616 trial on this point alone, and the appellee pay the costs of this appeal.
Livingston for the plaintiff’, Moreau for the defendant.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed ; that this cause be remanded for a new trial, with directions to the judge to ascertain what the services of the slaves were worth, and that the appellee pay the costs of this appeal.